**GENERAL AIR CONDITIONING COMPANY, Inc., Petitioner,**

v.

**THIRD WARD CHURCH OF CHRIST et al., Respondents.**

**No. B-558.**

Supreme Court of Texas.

April 10, 1968.

Schlosser & Whitcomb, James H. Whitcomb, Houston, for petitioner.

Bobby H. Caldwell, Houston, for respondent.

GREENHILL, Justice.

This case involves the construction of the statutes relating to liens for mechanics, contractors and materialmen. The respondent Church entered into a contract with Henry J. Webb Construction Co. for improvements to its church building. Webb entered into a subcontract with petitioner General Air Conditioning Company for the furnishing and installation of air conditioning and heating as part of these improvements. Webb and General completed their work under their respective contracts, and the Church paid Webb in full; but a balance of $1400 was left unpaid by Webb to General on the subcontract for the air conditioning contract. The sum of $1400 is less than ten per cent of the full contract between the Church and Webb.

As will be discussed below, General made certain demands upon the Church and noti-

fied the Church of its claim for this unpaid balance. General filed this suit against Webb and the Church for the unpaid balance on its contract and to establish and foreclose its "statutory and constitutional lien" against the Church property. General secured a default judgment against Webb, and that judgment has become final. The trial court, however, denied General any recovery or lien against the Church, holding that General had failed to establish a statutory lien against the Church property, and that General's recorded mechanic's lien was of no force and effect. The Court of Civil Appeals affirmed. 418 S.W.2d 839. The question before this Court is whether the courts below erred in holding that General failed to establish a statutory mechanic's and materialman's lien against the property of the Church under the provisions of Articles 5452–5469.[1]

The facts relating to General's attempted establishment of its lien are largely undisputed. Webb's work was complete and formally accepted by the Church on November 6, 1965, and Webb was paid in full by the Church on November 10, 1965. The Church did not retain ten per cent of the contract price for thirty days after completion of the work as required by Article 5469, and there was no agreement between the Church and Webb for any retainage. On December 2, 1965, General notified the Church by registered mail of its claim and its intention to file a lien against the Church property. The Church advised General by letter on December 6, 1965, that it had paid Webb in full and disclaimed any liability to General. On December 17, 1965, General sent a lien affidavit and claim in the statutory form to Webb and the Church by certified mail, and General's lien and affidavit were filed with the county clerk on December 20, 1965. As stated, the courts below have held that, under these circumstances, General failed to establish a statutory lien against the property of the Church. We cannot agree because this evidence conclusively establishes that General complied with the applicable statutory requirements and thereby established a valid mechanic's and materialman's lien against the Church property.

Article 5452 provides that those persons or firms including subcontractors who furnish labor or materials for the construction or improvement of a building *shall have* a lien upon the improvements and property of the owner "upon complying with the provisions of this Chapter." General comes *within the definition of a "subcontractor"* contained in Section 2f of Article 5452.

Article 5453 contains the following requirements for the fixing and securing of the lien provided by Article 5452:

"The lien provided for in Article 5452 may be fixed and secured in the following manner:

1. Every original contractor, not later than one hundred twenty (120) days, and every other person or firm, lumber dealer or corporation, artisan, laborer, mechanic or subcontractor who may be entitled to a lien under this Act, not later than ninety (90) days, after the indebtedness accrues as defined hereinafter in Article 5467, shall file his affidavit claiming a lien, to be recorded in a book kept by the county clerk for that purpose in the office of the county clerk of the county in which such property is located or through or into which such railroad may extend, and he shall send to the owner by certified or registered mail, addressed to his last known business or residence address, two (2) copies of such affidavit claiming a lien. * * *

2. If the claimant for such lien is other than an original contractor, such claim shall not be valid or enforceable unless the claimant shall also have complied with the applicable notice requirements hereafter set forth which shall be conditions precedent to the validity of such claims:

a. * * * [Agreements for retainages]

---

1. All references herein are to Vernon's Annotated Texas Civil Statutes.

b. Excepting instances of retainages for which notices have been given in accordance with the preceding subparagraph, the claimant shall give the applicable notice or notices described, as follows:

(1) Where the claim consists of a lien claim arising from a debt incurred by a subcontractor, the claimant shall give written notice of the unpaid balance of such claim to the original contractor not later than thirty-six (36) days after the tenth (10th) day of the month next following each month in which the claimant's labor was done or performed in whole or in part or his material delivered in whole or in part; and claimant shall give a like notice to owner not later than ninety (90) days after the tenth (10th) day of the month next following each month in which the claimant's labor was done or performed in whole or in part or his material delivered in whole or in part.

(2) Where the claim consists of a lien claim arising from a debt incurred by the original contractor, no such notice need be given to the contractor but notice to the owner, as prescribed in paragraph 2b(1) of this Article will be sufficient.

Such notices shall be sent by certified or registered mail, addressed to the owner, and where required by this Article to the original contractor, at their last known business or residence address. A copy of the statement or billing in the usual and customary form shall suffice as a notice under this subparagraph; provided, however, if such statement or billing is to be effective to authorize an owner to retain funds for the payment of such claim as provided in Article 5463 of this Act, it shall contain or be accompanied by some form of statement to an owner to the effect that if the bill remains unpaid he may be personally liable and his property subjected to a lien unless he withholds payments from the contractor for the payment of such statement

or unless the bill is otherwise paid or settled."

General's certified letter and lien affidavit notified the Church of its claim within the time and in the manner prescribed by Article 5453; the lien claim and affidavit met the requirements for form and substance contained in Article 5455; and the lien was filed with the county clerk within ninety days after the indebtedness accrued as required by Article 5453. Therefore, General properly secured and fixed its lien against the Church property unless other applicable statutes imposed further requirements upon General.

Articles 5463 and 5469 contain special provisions relating to the property owner's liability to those other than original contractors under certain circumstances. Article 5469 requires an owner to retain ten per cent of the contract price for a period of thirty days after the work is completed for the protection of laborers and materialmen "whenever work is done whereby a lien or liens may be claimed under Article 5452." Article 5469 further provides as follows:

" * * * All persons who shall send notices in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days after the work is completed shall have a lien upon the fund so retained by the owner, his agent, trustee, or receiver; with preference to artisans and mechanics, who shall share ratably therein to the extent of their claims; with any remaining balance to be shared ratably among all other participating claimants. If the owner, his agent, trustee, or receiver refuses or fails to comply with the provisions of this Article, then all claimants complying with the provisions of this Act shall share ratably among themselves, with preference to artisans and mechanics as above specified, liens at least to the extent of the aforesaid fund of ten per cent (10%) which should have been retained, as against the house, building, structure, fixture, or improve-

ment and all of its properties, and on the lot or lots of land necessarily connected therewith, to secure payment of such liens."

A complementing provision of Article 5463 provides as follows:

"2. When an affidavit claiming a lien is filed by any one other than the original contractor under the provisions of this Act, the original contractor shall defend the action brought thereupon at his own expense. In case of judgment against the owner or his property upon the lien, he shall be entitled to deduct from the amount due the contractor the amount of said judgment and costs; and, if he shall have settled with the contractor in full, he shall be entitled to recover from the contractor any amount so paid for which the contractor was originally liable. The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money. If the notices prescribed in Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453 and the claim or any part thereof is reduced to final judgment, the owner shall be required to pay, and his property shall be liable for, any money that he may have paid to the contractor after he is authorized to retain such money by virtue of this Article, as well as any money he is required to retain by the provisions of Article 5469 hereof."

■ ■ The foregoing statutes provide that when an owner fails to retain the ten per cent required by Article 5469, the claimants who have complied with the provisions of Article 5453 are entitled to recovery against the owner and a lien "at least to the extent of the aforesaid fund of ten per cent (10%) which should have

been retained." Article 5469 requires a claimant to file his affidavit within thirty days in order to secure a lien against the fund retained by the owner, but does not require filing within thirty days in order to secure the lien on the owner's property provided by Article 5469 or to obtain recovery against the owner as provided by Article 5463. General did not claim its lien within thirty days, but the Church did not retain the ten per cent required by Article 5469. Under these circumstances, we hold that the quoted provisions of Articles 5463 and 5469 are controlling, and that General was entitled to a recovery and a lien against the Church property to the extent of the ten per cent fund that the Church was required to retain. We do not construe the thirty-day period for claiming liens contained in Article 5469 as being applicable when the owner fails or refuses to retain the ten per cent fund, because, under these circumstances, Article 5469 grants a lien against the owner's property to "all claimants complying with the provisions of this Act;" and Article 5463 authorizes recovery from the owner of the amount that should have been retained "[i]f the notices prescribed by Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453."

Therefore, since General fixed and secured its statutory lien under the provisions of Article 5453, it was entitled to recovery against the Church and a lien on the Church's property under the provisions of Articles 5463 and 5469 to the extent of the ten per cent of the contract price that the Church was required to retain. General's claim is less than this ten per cent fund, and therefore General is entitled to full recovery from the Church and a lien on the Church property to secure payment thereof.

Since no amount in excess of ten per cent of the contract price is here involved, we reserve the question as to the extent of recovery, if any, to which a subcontractor might be entitled for amounts in excess of ten per cent.

The judgments of the courts below are reversed and the cause is remanded to the trial court for further proceedings including a foreclosure of the lien, in accordance with this opinion.