Paul DOWDY, Appellant,

v.

HALE SUPPLY COMPANY et al.,
Appellees.

No. 17415.

Court of Civil Appeals of Texas,
Fort Worth.

July 13, 1973.

Rehearing Denied Sept. 14, 1973.

Fillmore, Parish, Martin, Kramer & Fillmore, and Elmer H. Parish, Wichita Falls, for appellant.

Nelson, Montgomery & Robertson, and Keith Nelson, Wichita Falls, for appellees.

OPINION

BREWSTER, Justice.

Paul Dowdy filed this suit to remove an alleged cloud from the title to two tracts of land that he owned. The cloud came from the filing of Mechanic's Liens by Hale Supply Company and H & R Fabricating Company, defendants, to secure the cost of materials they had furnished to one Jess Lynch who had contracted with Dowdy to move a motel from one tract of land that Dowdy owned to another tract that he also owned. Defendants sought to fix the liens against both the tract that the motel was moved from and the tract to which it was moved. The defendants answered and filed cross-actions against Dowdy to recover from Dowdy the cost of the materials they had sold to Jess Lynch, which materials were to be used by Lynch in performance of his job of moving the motel. The cross-actions also sought a foreclosure of the Mechanic's Liens and a recovery of attorney's fees from Dowdy under Art. 2226, Vernon'sAnn.Tex.St.

In a non-jury trial the court rendered judgment awarding Hale Supply Company a personal judgment against Dowdy for $1,889.75 and awarding H & R Fabricating Company a personal judgment against Dowdy for $653.81. The judgment also provided for the foreclosure of the Mechanic's Liens against both tracts and it then proceeded to award the two defendants a personal judgment against Dowdy for attorney's fees in the amount of $800.-00.

The plaintiff, Dowdy, has appealed from this judgment.

We call attention to the fact that at least six of Dowdy's eight points of error do not comply with presently effective rules relating to briefing cases on appeal.

■ Rule 418, Texas Rules of Civil Procedure requires that a point of error be in such form as to point out to the appellate court the particular error or ruling of the court below that is claimed to be reversible error. Dowdy's last six points of error do not perform that function. See Jones v. Hortenstine, 291 S.W.2d 761 (Amarillo Tex.Civ.App., 1956, no writ hist.); Flock v. Kelso, 366 S.W.2d 698 (Amarillo Tex.Civ.App., 1963, no writ hist.); and State v. Rose, 402 S.W.2d 794 (Dallas Tex.Civ.App., 1966, no writ hist.). They consist merely of abstract statements or conclusions as to what Dowdy claims the law is on given subjects, without in any way showing how such statement of the law relates to a particular ruling made by the court below that he claims to be prejudicial error. They do not comply with Rule 418, T.R.C.P. State v. Rose, supra.

With the points being worded as they are, it takes considerable reading of the briefs and of the record before one unfamiliar with the case can even tell what particular rulings the trial court made are being complained of on appeal.

We will, however, consider these points on the basis of the statements and argument made under them in view of the liberal rulings that have been made by the courts on this point. See Russell v. Houston Belt and Terminal Railway Co., 363 S.W.2d 160 (Beaumont Tex.Civ.App., 1962, ref. n.r.e.); and Miller v. Thomas, 226 S.W.2d 149 (Amarillo Tex.Civ.App., 1949, writ ref.).

Dowdy's first point of error is that the trial court erred in rendering judgment against him for the $800.00 attorney's fees.

We sustain this point.

The attorney's fee was awarded the appellees by the trial court on the theory that such fee was authorized by Art. 2226, V.A.C.S., because this suit is to recover for the sale price of materials furnished.

■ The law is that Art. 2226, V.A.C.S. was intended to and only applies to claims for personal services rendered, labor done, or materials furnished by the claimant for and/or to the person or corporation against whom the claim is being asserted. See Tenneco Oil Company v. Padre Drilling Company, 453 S.W.2d 814 (Tex.Sup., 1970); Long v. Smith, 466 S.W.2d 32 (Corpus Christi Tex.Civ.App., 1971, ref. n. r.e.); and University State Bank v. Gifford-Hill Con. Corp., 431 S.W.2d 561 (Fort Worth Tex.Civ.App., 1968, ref. n.r. e.). The facts in those cases were similar to the ones involved here, and in each instance attorneys' fees were not allowed.

The undisputed evidence here showed: that Dowdy had no contractual relations whatever with either of the appellees; that he had contracted with Jeff Lynch to move a motel for him to another tract of land that he owned; that Lynch had purchased all of the materials involved from the appellees and that such materials were delivered to Lynch for his use in performing the contract to move the motel; that Lynch did not pay for the materials and later abandoned the job; and that none of the materials involved were furnished by either of the appellees for and/or to Dowdy, the person against whom the claim is being asserted.

■ We hold that since the materials involved were not furnished by the appellees for or to Dowdy, the person against whom the claim is being asserted in this case, that the trial court erred in awarding attorney's fees to the appellees on the theory that they were authorized by Article 2226, V.A.C.S.

In his third point of error Dowdy contends that certain of the court's findings of fact are so against the weight and preponderance of the evidence as to be manifestly unjust and that this court should set them aside and hold them to be of no force and effect.

Contained in the evidence as plaintiff's Exhibits Nos. 1 and 2 were the invoices showing an itemized list of the materials furnished to Lynch by each of the appellees and the prices that appellees charged Lynch for each of those items.

The undisputed evidence showed that after Lynch abandoned the job that Bill Hale and his father heard that he had left and came to the jobsite and picked up, with Dowdy's consent, a bunch of these materials that had been sold to Lynch by each of the two appellees.

Bill Hale, referred to above, was a partner in the appellee, H & R Fabricating Company, and was also vice-president of the appellee, Hale Supply Company, which was a corporation.

With reference to picking up the materials Hale testified: "So . . . we were trying to protect our . . . our money, or goods and material, whatever you might call it. We thought to the best of our judgment we tried to recover what we could."

The evidence showed that the angle iron that was sold to Lynch by H & R that was repossessed was taken to the company yard and stacked in a pile and was apparently still in that stack at trial time.

The court's finding of fact No. 14 was as follows: "Some of the materials which had been picked up at the job site were specifically released to the successor-contractor mover at his request and the request of Dowdy, although the same were still deemed to have been sold to Lynch."

Dowdy complains that such finding is not supported by the evidence and that it is against the great weight and preponderance of the evidence.

We sustain that contention in both respects. The only evidence bearing on this finding was given by Bill Hale, who said the following: "I believe we have an itemized statement over there of it. Uh, we picked up some of it, and then this, uh, fellow named Charles that was evidently the foreman out there came out and said that he . . . had recently been with Mr. Dowdy and we had some stuff that didn't actually belong to us. And we gave it back to him. It wasn't ours, . . . ." And again Hale testified as to this transaction as follows: (speaking of his conversation with Charles) "He said he was going to get the job to move the motel, and he knew that we had some stuff there that didn't belong to us. So I told him that we didn't want anything unless it belonged to us . . . . When we got them out there I knew that they wasn't our jacks."

Hale also testified that he gave back to Charles some chains and boomers that they had picked up because appellees did not sell them to Lynch.

This testimony does not show that materials appellees sold to Lynch that were repossessed by appellee were later turned over to Charles at Dowdy's request, as is indicated by finding of fact No. 14. This testimony shows that the materials given to Charles by appellees were materials that appellees had not sold to Lynch.

It is also true that this testimony is not competent evidence to establish that Dowdy had made any request of appellees that they turn any materials whatever over to Charles.

The court also found at the end of its finding No. 16 as follows: ". . . as is indicated in Findings 13 and 14, what little material that remained is insignificant." We hold that that finding is also against the great weight and preponderance of the evidence.

The evidence failed to show which of the items of the materials sold to Lynch by appellees were repossessed and kept by appellees. No evidence was tendered to show the value of the items repossessed by appellees. There was no evidence to show what part of the materials sold to Lynch remained at the jobsite after he left.

There is no way from the evidence offered that one can tell whether the materials referred to in finding of fact No. 16 were insignificant.

The court's finding No. 13 is that: "Most of the materials picked up were returned to the job site because the defendants had not sold them to Lynch."

There was no evidence to show that *most* of the materials picked up were returned by appellees.

The trial court's finding of fact No. 5 is that: ". . . Jess Lynch, purchased materials from the defendant, H & R Fabricating Company, . . . and that such purchased materials were used and incorporated in, and/or consumed in the direct prosecution of the work, at the job sites." This finding is against the great weight and preponderance of the evidence because the undisputed evidence shows that after Lynch abandoned the job that appellees went to the jobsites and repossessed a quantity of the materials that H & R had sold to Lynch, took it to their yard and put it in a stack. The record does not show that H & R ever thereafter parted with this property.

After the above referred to findings that we have held are not supported by evidence or are against the great weight and preponderance of the evidence are set aside, the record is left showing, without dispute, that after each of the appellees had sold and delivered its bill of materials to Lynch, that Lynch partly performed his contract with Dowdy and then abandoned the job. The undisputed evidence further shows that when appellees heard about it, they came to the jobsite and each appellee repossessed a part of the materials which it had sold to Lynch.

No evidence was offered to show which of the items the appellees sold to Lynch were repossessed by appellees. No evidence was offered to show the market value of the goods repossessed by the appellees.

It thus appears that the effect of the findings which we have set aside has been to, in part, allow the appellees to recover a judgment for the entire sale price of the materials sold to Lynch, plus recover the possession of a part of such goods without allowing an offset or credit for the market value of the goods repossessed.

The undisputed evidence shows that Hale Supply Company's total charge for all the materials sold to Lynch was $1,889.75 and that H & R Fabricating Company's total charge to Lynch for all materials sold by it was $653.81. The judgment appealed from awarded recoveries against Dowdy and in favor of the appellees for these exact amounts. In other words no offsets or credits were given or allowed Dowdy for the value of the items that appellees sold to Lynch and later repossessed.

We do not believe that the judgment rendered does justice between the parties under the circumstances.

The evidence should have been developed to show the items repossessed by each appellee and to establish the value of such repossessed materials.

In determining the amount of the bill owed to each appellee a deduction should have been allowed or made of the market value of the materials repossessed from the sale price of the materials.

Dowdy's fifth point of error is that "A seller's successful reclamation of goods sold to an insolvent buyer excludes all other remedies with respect to them."

The wording of this point is apparently taken from Sec. 2—702(3) of the Uniform Commercial Code.

We overrule this point. From its own wording the statute applies in instances where the buyer is insolvent. The evidence in this case did not establish conclusively that Lynch was insolvent and the court made no such finding.

Under these circumstances we overrule the fifth point of error.

In this case the court found that Dowdy, the owner, contracted with Lynch, the contractor, to move the motel for him for $35,000.00. The appellees herein had sold all of the materials involved to the contractor, Lynch. Appellees had no personal dealings with the owner and had not sold him any of the materials. The contractor partly performed and then abandoned the project and left town on June 23, 1970. The Court further found that at the time the contractor abandoned the job the owner had paid him $13,000.00 on the contract price and that this sum was an overpayment of about $7,000.00 on the amount that was due from the owner to the contractor, under the terms of the contract, at the time the contractor abandoned the job. In other words, at the time the contractor abandoned the job the owner did not owe him anything on the contract and, in fact, had at that time paid him in advance the sum of about $7,000.00 more on the contract than the contractor at that time had coming under its terms.

The court further found that after Lynch abandoned the job, it cost the owner, Dowdy, more to complete the contract than the amount of the original contract between Lynch and Dowdy.

The following is from Harris v. Interstate Lumber Company, 303 S.W.2d 950 (Waco Tex.Civ.App., 1957, no writ hist.): "It is the law that where an owner (defendant Harris in this case) employs a contractor to build a house for a sum certain, and makes payments to the contractor, but the contractor abandons the job before the completion of same; and creditors of the contractor file statutory affidavit asserting lien on the owner's property for material furnished the contractor; but completion of the house by another contractor absorbs the entire balance of the original contract price; then the creditors of the orignial contractor for materials furnished, acquire no rights against the owner and no lien against his property. See: Laredo Brick Co. v. Urdiales, Tex. Civ.App., 263 S.W.2d 332 (no writ history); Dudley v. Jones, 77 Tex. 69, 14 S.W. 335; Dudley v. Jones, Tex.Civ.App., 25 S. W. 994; Gollnick v. Fry, 119 Tex. 23, 23 S.W.2d 677."

When this rule is applied to the facts of this case it is apparent to us that the appellees had no lien against Dowdy's property and that Dowdy is not personally liable to appellees for any part of the materials that they sold to Lynch unless appellees acquired the right to personal judgments against Dowdy and to liens against Dowdy's property by virtue of the provisions of Art. 5469, V.A.C.S. And what we have said would be true even if appellees have fully complied with all the provisions of Art. 5453, V.A.C.S., relating to the steps that are to be taken in order to fix their lien.

Article 5469, V.A.C.S., provides: "Whenever work is done whereby a lien or liens may be claimed under Article 5453 hereof, it shall be the duty of the owner . . . to retain in his hands during the progress of such work and for thirty (30) days after the work is completed, . . . to secure the payment of any other claimants furnishing materials . . . or specially fabricated material for any contractor . . . in the performance of such work ten per cent (10%) of the contract price to the owner . . . or ten per cent (10%) of the value of same, measured by the proportion that the work done bears to the work to be done, using the contract price . . . as a basis of computing value. All persons who shall send notices in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days after the work is completed shall have a lien upon the

fund so retained by the owner . . .; with preference to artisans . . .; with any remaining balance to be shared ratably among all other participating claimants. If the owner . . . refuses or fails to comply with the provisions of this Article, then all claimants complying with the provisions of this Act shall share ratably among themselves . . . liens at least to the extent of the aforesaid fund of ten per cent (10%) which should have been retained . . . to secure payment of such liens."

The trial court made the following findings of fact that are material to this discussion: (8) at the time of the abandonment by Lynch, Lynch had been paid a total of $13,000.00, an overpayment at such time of approximately $7,000.00 pursuant to the terms of the contract which Lynch and Dowdy had; (25) plaintiff, Dowdy, did not retain 10% of the contract price for a period of 30 days after the moving job was completed so as to secure the materialmen including these defendants, pursuant to Art. 5469; (26) 10% of the contract price was $3,500.00; and (27) the total of defendants' lien herein is $2,553.56.

Dowdy did not retain any part of the contract price that Lynch had coming under the contract up to the time he abandoned the job, as is required by Art. 5469.

The trial court made the following conclusions of law that are pertinent to this discussion: (2) ". . . It was the duty of plaintiff, Dowdy, to retain ten (10%) per cent of the contract price to secure the payment of claimants furnishing materials to its contractor. Article 5469, . . . (3) Plaintiff, Dowdy, is liable to the defendants on their cross-action in the sum of $2,553.56 for failure to retain the ten per cent retainage of the contract price . . . ."

Article 5469 only required the owner to retain 10% of the amount due to the contractor under the contract terms up until the time he abandoned the job. We hold that since the owner had seen fit to pay the contractor $13,000.00 on the contract price at the time the contractor abandoned the job, and since the owner has owed the contractor no other sums on the contract, either then or later, that the only retainage the owner, under the facts of this case, was required to make under Art. 5469 was 10% of the $13,000.00 that the owner paid the contractor, which sum would equal $1,300.00.

The trial court held in effect that the owner, Dowdy, was required by Art. 5469 to retain 10% of the full contract price even though only a fractional part of the job had been completed and even though the contract price had not been fully earned under the contract terms at the time of abandonment. This holding was erroneous and was prejudicial because based on it the trial court rendered a personal judgment in favor of the two appellees and against Dowdy for $2,553.56 and foreclosed a lien against his property to pay a judgment in favor of appellees for that amount.

We hold that both appellees complied with the terms of Art. 5453 relating to fixing their liens.

When Dowdy failed to retain the $1,300.00 as he was required to do by Art. 5469, he, the owner, became personally liable to the two appellees here for the amounts, owed them for materials, up to the amount that he should have retained, to-wit: $1,300.00. See General Air Con. Co. v. Third Ward Church of Christ, 426 S.W.2d 541 (Tex.Sup., 1968).

The two appellees would be entitled to personal judgments against Dowdy that together totalled not more than the $1,300.00 that Dowdy should have retained under the provisions of Art. 5469. Each of the two appellees would be entitled to share ratably or proportionately in the $1,300.00 that

Dowdy should have retained and each appellee would be entitled to a lien against Dowdy's property and to a foreclosure thereof in order to collect such judgments.

The court erred for the reasons stated in rendering a personal judgment against Dowdy for the total sum of $2,553.56 and in foreclosing a lien against his property to collect that amount.

■ The question of whether or not appellees filed their affidavits claiming liens within 30 days after the work was completed, as is provided for in Art. 5469, is not important in this case in view of the fact that Dowdy did not retain any part of the 10% retainage provided for in that statute.

This question was settled in the case of General Air Con. Co. v. Third Ward Church of Christ, supra, wherein the Court said at page 544:

"General did not claim its lien within thirty days, but the Church did not retain the ten per cent required by Article 5469. Under these circumstances, we hold that the quoted provisions of Articles 5463 and 5469 are controlling, and that General was entitled to a recovery and a lien against the Church property to the extent of the ten per cent fund that the Church was required to retain. We do not construe the thirty-day period for claiming liens contained in Article 5469 as being applicable when the owner fails or refuses to retain the ten per cent fund, because, under these circumstances, Article 5469 grants a lien against the owner's property to 'all claimants complying with the provisions of this Act;' and Article 5463 authorizes recovery from the owner of the amount that should have been retained '(i)f the notices prescribed by Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453.' "

Reversed and remanded.