**HUNT COUNTY LUMBER, INC., Appellant,**

v.

**HUNT–COLLIN ELECTRIC COOPERATIVE, INC., Appellee.**

**No. 05–87–00735–CV.**

Court of Appeals of Texas, Dallas.

March 14, 1988.

Rehearing Denied April 20, 1988.

Joe Weis, Greenville, for appellant.

Jack L. Paris, Jr., Greenville, for appellee.

Before STEPHENS, ROWE and BAKER, JJ.

BAKER, Justice.

Hunt County Lumber, Inc. (subcontractor) appeals from an adverse declaratory judgment rendered in favor of Hunt–Collin Electric Cooperative, Inc. (owner). Because we agree with subcontractor that the trial court erred in rendering judgment by misinterpreting the applicable provisions of the Texas Property Code, we reverse the trial court's judgment and remand the cause for a new trial.

Owner entered into a written contract with C & M Concrete requiring C & M to perform foundation work upon owner's property. Subcontractor supplied certain materials to C & M which were used in performance of C & M's obligation with owner. The reasonable cost of the materials furnished by subcontractor was $5,298.48 and they were supplied to owner's property before the completion of the contract by C & M on April 17, 1986. Subcontractor was not paid by C & M and on July 15, 1986, subcontractor sent a notice to owner of unpaid balance and demand for payment together with a copy of its filed affidavit for mechanic's and materialman's lien.

At the time owner received the notice and demand for payment and the affidavit for mechanic's and materialman's lien, the owner still possessed $2,835.00, which it had retained pursuant to its contract with C & M. Owner had received no written notice of subcontractor's claim prior to receiving the notice and affidavit referred to

above. The contract between C & M and owner provides that the total contract price for the work to be done was $28,350.00. Paragraph 5 of this agreement provides that owner was to pay C & M $25,515.00 at completion of foundation, and $2,835.00 upon completion of the twenty-eight day 3,000 PSI test by an independent testing service. The test referred to in the payment portion of the contract was the owner's requirement that C & M produce concrete with a strength of 3,000 pounds per square inch twenty-eight days after the date the concrete was poured. The foundation constructed by C & M failed to meet the contract specifications; therefore, the owner did not make the $2,835.00 final payment to C & M.

Although owner retained $2,835.00 of the contract price, it refused to pay that sum to subcontractor in response to subcontractor's demand. Owner instituted suit under the Texas Uniform Declaratory Judgments Act (Chapter 37, Texas Civil Practice and Remedies Code) seeking a judicial determination that subcontractor's affidavit did not constitute an enforceable lien against owner's property and constituted a cloud upon its title. Subcontractor answered the suit and filed its original counterclaim seeking foreclosure of its materialman's lien together with interest, attorney's fees and costs pursuant to the provisions of Chapter 53 of the Texas Property Code. The parties waived a jury and submitted the case to the trial court upon stipulated facts. The trial court entered its findings of fact based upon the stipulations and its conclusions of law that: (1) subcontractor had filed its claim for unpaid materials after the expiration of the thirty day retainage period; (2) the contract consideration is $28,350.00 and a balance of $2,835.00 is due upon completion; (3) the contract was not completed and fully performed by C & M, but owner accepted the substandard work; (4) $2,835.00 of the contract price remains in the hands of owner, but is not due and payable to C & M. The court further concluded that the $2,835.00 was available for

the benefit of a materialman when and if such sum becomes payable and concluded owner was entitled to a judgment removing subcontractor's lien as a cloud upon the title to owner's real property, for attorney's fees, and court costs.

Subcontractor argues that it complied with subchapter C of Chapter 53, Texas Property Code,[1] and that it had properly perfected a mechanic's and materialman's lien against the owner's property. Subcontractor acknowledges that its lien affidavit was not filed within thirty (30) days after completion of the work under the original contract as required by section 53.103(2). Nevertheless, subcontractor argues that at the time the owner received the notice and materialman's lien, the owner still had within its possession and under its control $2,835.00 which it had retained under the contract and that owner refused to pay that sum to it in satisfaction and release of its lien claim.

Owner counters subcontractor's argument by asserting that since the subcontractor's claim was presented after the expiration of the thirty (30) day retainage period, its further liability, if any, depends on whether the funds in its possession were due under the contract to C & M, its contractor. Owner asserts that because C & M failed to meet the strength test, it never incurred any contractual liability for the $2,835.00; therefore, since subcontractor's lien claim was outside the thirty (30) day period these funds were not trapped nor was owner required to pay them to subcontractor. Owner argues that since at the time owner received subcontractor's notice and affidavit there was no money in its possession that was either due to C & M or required by the contract to be paid to C & M, no sums were due to subcontractor as a derivative claimant.

■ The trial court agreed with owner's position, holding that the final payment of $2,835.00 remaining in the hands of the owner was not due and payable to C & M

1. Unless otherwise indicated, all references to Statutes, Codes or Subdivisions thereof shall refer to the Texas Property Code.

and was only available for the benefit of a materialman when and if such sum became payable. The court also removed subcontractor's lien as a cloud to the title of owner's property. By its judgment, the trial court impliedly concluded as a matter of law that the $2,835.00 remaining in the possession and control of the owner was the statutory 10% retainage contemplated by section 53.101. We disagree with this conclusion.

It is settled law that if an owner fails to retain 10% of the contract price as retainage for thirty (30) days following completion of the work, as required by section 53.101, then a subcontractor who perfects a lien claim pursuant to the provisions of section 53.052 is entitled to recover against the owner "at least to the extent of the fund of 10% which should have been retained." *General Air Conditioning Co. v. Third Ward Church of Christ*, 426 S.W.2d 541, 544 (Tex.1968) (quoting Article 5469 of the Revised Civil Statutes, now Section 53.-105 of the Property Code); *Haden Co. v. Mixers, Inc.*, 667 S.W.2d 316, 317 (Tex.App. —Dallas 1984, no writ). The precise issue before this Court is whether the $2,835.00 remaining in owner's possession represents the 10% statutory retainage as required by section 53.101.

The contract between owner and C & M Concrete reflects that the total contract price was $28,350.00. Article 5 of this contract provided for progress payments consisting of $25,515.00 to C & M at completion of the foundation, and a final payment of $2,835.00 upon successful completion of the twenty-eight day 3,000 PSI test by an independent testing service. Since the foundation installed by C & M failed the test, owner did not pay the final payment of $2,835.00 to C & M. Therefore, the final contract price was $25,515.00. From the stipulation, it appears that the owner paid the $25,515.00 in full on or before completion of the contract. The agreement between owner and C & M does not contain any language providing for the retention of either $2,551.50 for thirty days following completion of the contract or for the retention of $2,835.00 for thirty days following the completion of the twenty-eight day concrete strength test. The agreement between owner and C & M merely provided for a reduction in the agreed contract price in the event the foundation failed the strength test. Consequently, the $2,835.00 which owner stipulated it "retained" after completion of the work was in legal effect no retainage at all. As a matter of law, the evidence fails to show that the owner retained 10% of the contract price for thirty (30) days after completion of the work as required by section 53.101. Accordingly, the trial court's judgment to the contrary is erroneous and the trial court's declaratory judgment must be reversed, and the case remanded for further proceedings.

▮ Under the terms of the contract between owner and C & M, and under the facts of this case, the total contract price was $25,515.00. To comply with section 53.101, owner should have retained $2,551.50 for thirty (30) days following the completion of the contract. This is the maximum amount of lien which materialmen could assert. *See McKalip v. Smith Bldg. & Masonry Supply, Inc.*, 599 S.W.2d 884, 888 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). *See also Dowdy v. Hale Supply Co.*, 498 S.W.2d 716 (Tex.Civ.App.— Fort Worth 1973, no writ). The code does not require the filing of a lien within thirty (30) days in order to secure the lien on the owner's property as provided by section 53.101, or to obtain recovery against the owner as provided by section 53.052. *See General Air Conditioning Co. v. Third Ward Church of Christ*, 426 S.W.2d at 544. Thus, under the circumstances shown in this record, upon a proper showing, subcontractor could obtain a recovery and lien against the owner's property not to exceed $2,551.50. *See Sixty–Seven Properties v. Cutsinger Electrical Contractors, Inc.*, 536 S.W.2d 268, 272 (Tex.Civ.App.—Corpus Christi 1976, no writ).

We reverse the trial court's judgment and remand the cause for further proceedings in conformity with this opinion.