**TDINDUSTRIES, INC., Appellant,**

v.

**NCNB TEXAS NATIONAL BANK, Appellee.**

**No. 11–92–003–CV.**

Court of Appeals of Texas, Eastland.

Sept. 10, 1992.

Rehearing Denied Oct. 15, 1992.

---

Michael E. Gazette, Gregg Smith, Ramey & Flock, Tyler, for appellant.

John F. Berry, Pye, Dobbs & Berry, Tyler, for appellee.

## OPINION

McCLOUD, Justice.

The controlling issue in this case is the date the work was "completed" on a construction contract under TEX.PROP.CODE ANN. § 53.101 (Vernon Supp.1992). TDIndustries, Inc. (TDI), a subcontractor, sought to foreclose its mechanic's lien against property owned by NCNB Texas National Bank (NCNB). TDI filed its lien after notifying NCNB that TDI had not been paid for work on the subcontract and after requesting payment from the retainage held by NCNB. NCNB counterclaimed seeking a declaratory judgment that the lien was invalid. In a nonjury trial, the trial court held that the mechanic's lien was invalid because it was not timely filed and awarded attorney's fees to NCNB. We reverse and render in part and reverse and remand in part.

TDI argues that the trial court erred in finding that all of the work on the construction contract between NCNB and the general contractor was completed on January 2, 1990, because the evidence conclusively established that the date of completion was February 28, 1990.[1] We agree. In order to determine if a fact was conclusively established, we must review all of the evidence in the record and determine whether the converse of the court's finding was established as a matter of law. *Precipitair Pollution Control v. Green*, 626 S.W.2d 909 (Tex.App.—Tyler 1981, writ ref'd n.r.e.).

The trial court's findings of fact and the parties' stipulated facts show that NCNB and Client Construction Management, Inc., the general contractor, entered into a contract for improvements to unfinished rental property owned by NCNB. The $297,943.00 contract required "substantial" completion by January 1, 1990. TDI subcontracted with the general contractor to furnish and install the heating and air conditioning systems required under the original contract. On December 29, 1989, the general contractor submitted an application for payment of the balance owed and certified that 100 percent of the work under the original contract was complete. The tenant accepted the premises as of January 1, 1990. On January 2, the architect employed by NCNB certified that 100 percent of the work was complete, and the city building inspector issued an authorization for partial occupancy. On January 3, NCNB paid the general contractor the balance owed less 10 percent for required retainage. During the month of February, however, a "pocket door," which was required by the original contract but omitted during construction, was installed in a wall between two rooms in the building. The installation of the door was completed on February 28, 1990. The architect was aware that the pocket door had been omitted when he certified that 100 percent of

---

1. Although this finding is contained in the trial court's conclusions of law, appellee argues and we agree that it is actually a finding of fact. See *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607 (Tex.1979); see also *Posner v. Dallas County Child Welfare Unit of the Texas Department of Human Services*, 784 S.W.2d 585 (Tex.App.—Eastland 1990, writ den'd).

the work under the original contract was complete.

We must determine what is meant by the term "completion." NCNB was required to retain 10 percent of the contract price for 30 days after the work under the original contract was completed. Section 53.101. When an owner fails to hold the required retainage for 30 days after completion, a lien may be established against the property. TEX.PROP.CODE ANN. § 53.105(a) (Vernon Supp.1992). In TEX. PROP.CODE ANN. § 53.106(e) (Vernon Supp.1992), the term "completion" is defined in the following manner:

In this subchapter [which includes Section 53.101], "completion" of an original contract means the *actual completion* of the work, including any extras or change orders reasonably required or contemplated under the original contract, other than warranty or repair work. (Emphasis added)

The court in *Weissberger v. Brown–Bellows–Smith,* 289 S.W.2d 813 (Tex.Civ. App.—Galveston 1956, writ ref'd n.r.e.), a suit between a lessor and lessee, held that "substantial" performance of a building contract is regarded as full performance. In *Transamerica Insurance Company v. Housing Authority of the City of Victoria,* 669 S.W.2d 818, 823 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.), a suit involving the surety on a performance bond, the court stated: "It has been uniformly held that 'substantial completion' of a construction contract is regarded, in legal parlance, as 'full performance.'"

■ These "substantial" completion cases are not persuasive since we are dealing with a legislative definition. Section 53.106(e) expressly defines "completion" where an owner is required to retain a portion of the contract price for the benefit of possible mechanic's-lien claimants. We must construe the words "actual completion," contained in Section 53.106(e), according to the rules of common usage. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1988). We must also consider that the purpose of the mechanic's lien statute is to protect laborers and materialmen and that the statute must be construed liberally in favor of mechanics. *First National Bank in Dallas v. Whirlpool Corporation,* 517 S.W.2d 262, 269 (Tex.1974).

■ The language used by the legislature in Section 53.106(e) is not ambiguous. It is clear that, in order for a contract to be complete under Section 53.106(e), "actual completion of the work" required or contemplated by the original contract, including any extras or change orders, is mandatory. The pocket door was required by the original contract but was omitted during construction; and the architect employed by the owner was aware that the door had been omitted. We note that the trial court expressly refused to find and that there is no evidence to support the contention that the installation of the pocket door was warranty or repair work.

■ Based upon a review of all of the evidence and the statutory definition of "completion," we hold that the date of completion was conclusively established as February 28, 1990. The trial court found that the installation of the pocket door was completed on that date. There is no evidence to the contrary.

TDI argues that the trial court erred in concluding that NCNB properly complied with Section 53.101 by retaining 10 percent of the contract price for 30 days after the work had been completed. We agree.

We have held that the date of completion of the work on the original contract under Section 53.101 was February 28, 1990. On February 2, 1990, however, $20,000.00 of the $29,794.00 that NCNB was required to hold as retainage was paid to the general contractor. NCNB failed to comply with Section 53.101 because it did not hold the required retainage for 30 days after completion of the work on the original contract.

TDI argues that the trial court erred in concluding that TDI's affidavit of lien was not timely filed and was, therefore, invalid. We agree.

■ Because NCNB failed to comply with Section 53.101, TDI could establish a lien against NCNB's property by filing its

lien affidavit in accordance with TEX. PROP.CODE ANN. § 53.052 (Vernon Supp.1992). See Section 53.105(a)[2]; *General Air Conditioning Company v. Third Ward Church of Christ,* 426 S.W.2d 541 (Tex.1968); *Hunt County Lumber, Inc. v. Hunt–Collin Electric Cooperative, Inc.,* 749 S.W.2d 179, 182 (Tex.App.—Dallas 1988, writ den'd). The record shows that TDI complied with the applicable statutes and properly perfected a lien against NCNB's property. See TEX.PROP.CODE ANN. §§ 53.052, 53.053(c), 53.054(a), 53.-055, & 53.056 (Vernon 1984 & Supp.1992). The trial court should have ordered that the lien against NCNB's property be foreclosed and should have awarded judgment for TDI in the amount of $24,659.00. See *Ambassador Development Corporation v. Valdez,* 791 S.W.2d 612, 622 (Tex.App.—Fort Worth 1990, no writ); *Hayek v. Western Steel Company,* 469 S.W.2d 206 (Tex. Civ.App.—Corpus Christi 1971), *aff'd,* 478 S.W.2d 786 (Tex.1972).

TDI contends that it is entitled to reasonable attorney's fees of $8,215.00 and expenses of $340.81 and that the trial court's award of attorney's fees in the amount of $3,908.25 to NCNB should be reversed. At trial, the amount and reasonableness of the requested fees were stipulated to by both parties.

TEX.PROP.CODE ANN. § 53.156 (Vernon Supp.1992) provides that:

> In any proceeding to foreclose a lien ... or in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court may award costs and reasonable attorney's fees as are equitable and just.

It is the trial court, and not this court, that has the discretion to award attorney's fees under Section 53.156. Thus, we cannot sustain TDI's request for attorney's fees. In view of our reversal and rendering of the trial court's judgment, we find that the award of $3,908.25 in attorney's fees to NCNB is inequitable and that the trial

court abused its discretion in that award. The issue of attorney's fees is severed and remanded to the trial court for reconsideration.

The judgment of the trial court is reversed, and this court renders judgment that TDI has a valid lien on NCNB's property to secure the sum of $24,659.00. The issue of attorney's fees is remanded for reconsideration by the trial court.

2. Section 53.105(a) provides that:

If the owner fails or refuses to comply with this subchapter [regarding the required retainage], the claimants complying with this *chapter* have a lien, at least to the extent of the amount that should have been retained from the original contract. (Emphasis added)