Herman C. PAGE, Appellant,

v.

**STRUCTURAL WOOD COMPONENTS, INC., Appellee.**

No. 14–00–00824–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 23, 2001.

Rehearing Overruled Oct. 4, 2001.

John Marvin Young, Houston, for appellants.

Jonathan M. Williams, James Elmore Hudson, Houston, for appellees.

Panel consists of Justices FOWLER, WITTIG, and AMIDEI.*

### OPINION

MAURICE AMIDEI, Justice
(Assigned).

This is a mechanic's and materialman's lien case. Property-owner Herman C. Page appeals from a judgment awarding subcontractor Structural Wood Components, Inc. ("Wood") a judgment against Page for $11,861 in actual damages, $1,442 as pre-judgment interest, $4,000 in attorney's fees, and foreclosure of Wood's mechanic's and materialman's lien in Page's real property. For the reasons stated below, we modify the judgment by removing the *in rem* relief against Page's real property, and we affirm the judgment as modified.

### Background

Page entered into a contract with Mark Sepolio, Sr. d/b/a Custom Concrete & Construction, Inc. ("Sepolio") sometime prior to September 1, 1997 to remodel improvements on Page's property at 3502 Dover,

* Former Justice Maurice Amidei sitting by assignment.

Houston, Texas ("Property"). The parties fixed the contract price at $300,000. Page made periodic progress payments to Sepolio with the last payment being made on March 25, 1998. The total amount paid to Sepolio was $270,000. In April of 1998, Sepolio refused to finish the work on the Property unless Page advanced additional funds to him. Page considered that Sepolio was in breach of his contract, and Page's tenant was threatening to cancel its lease unless the work was finished promptly. Therefore, Page terminated Sepolio's contract on April 14, 1998 and has not paid Sepolio any money since that termination.

At trial, Page's attorney-in-fact testified that $30,000 in retainage (10% of $300,000) had been held back from the payments to Sepolio. Immediately after termination, Page hired various substitute contractors to finish the work. Page paid these contractors a total of $27,074.43. The construction work was finished on July 21, 1998. Page made the payments to the substitute contractors from his operating account. There were no subcontractors performing work or supplying materials to any of the substitute contractors.

Wood was a subcontractor who agreed with Sepolio to provide goods and services to the project. When Sepolio defaulted in his payments to Wood, Wood filed a mechanic's and materialman's lien affidavit in the Real Property Records of Harris County on May 15, 1998 ("Lien Affidavit"). Wood sent a copy of its notice of claim to Page by certified mail on May 15, 1998 and a copy of the Lien Affidavit to Page on May 18, 1998. On September 17, 1998, Page paid $3,582.74 to Sherwin Williams Company, another subcontractor on the project who had filed a lien affidavit on June 2, 1998.

After a bench trial, the trial court granted Wood a judgment against Sepolio and Page jointly and severally for actual damages of $11,861, $1442 in prejudgment interest, postjudgment interest and court costs. The judgment also ordered Page to pay $4,000 in attorney's fees to Wood, found that Wood's mechanic's and materialman's lien in the Property ("Lien") is valid, and ordered foreclosure of the Lien. The trial court filed findings of fact and conclusions of law.

## Issues Presented

On appeal, Page asserts the following issues: (1) Is the trial court's finding of fact number 4 erroneous because the Lien Affidavit did not contain a jurat? (2) Is the first sentence of the trial court's finding of fact number 5 erroneous because the Lien Affidavit did not contain a jurat? (3) Is the last sentence of the trial court's finding of fact number 7 erroneous because there was no evidence that Page used the remaining funds under the contract to pay other contractors to complete the work? (4) Is the trial court's finding of fact number 10 erroneous because there was no evidence that Page failed to retain ten percent of the contract price? (5) In the alternative, are the findings complained of in issues 3 and 4 erroneous under a factual insufficiency analysis? (6) Did the trial court err in its conclusion of law number 1 that Wood complied with the requirements of the Texas Property Code as to the notice and filing of its Lien Affidavit and that Wood holds a valid Lien? (7) Did Page's general denial put in issue the lack of a jurat in Wood's Lien Affidavit? (8) Did the trial court abuse its discretion by overruling Page's motion for leave to file a trial amendment raising the lack of a jurat? (9) Did Wood perfect its retainage lien as follows: (a) by proving that Page did not retain ten percent of the contract price until 30 days after completion of the job; and (b) by timely filing the Lien Affidavit and timely sending a copy of

the affidavit to Page? (10) Is Wood's right to recover money from Page or to impose a lien on Page's Property under the fund-trapping provisions of the Texas Property Code derivative of the original contractor's right to recover against Page?

### Standards of Review

■ In most of the issues that we rule on in this opinion, Page contends that there was no evidence to support the trial court's findings in this case. The trial court's findings of fact have the same force and dignity as a jury verdict, and this court reviews sufficiency challenges to findings of fact by the same standards that apply in reviewing a jury's findings. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991).

■ When reviewing a no-evidence challenge, this court may consider only the evidence and reasonable inferences there-from that support the challenged findings, and this court disregards all evidence and inferences to the contrary. *Texarkana Memorial Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex.1997). This court may sustain a no-evidence challenge if the record reveals one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

■ Also, to the extent that Page's issues require a construction of Chapter 53 of the Texas Property Code, our objective is to determine and give effect to the legislature's intent. *See National Liability and Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). We presume that the legislature intended the plain meaning of its words. *Id.* If possible, we must ascertain the legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* When interpreting a statute, we consider the entire act, its nature and object, and the consequences that would follow from each construction. *Atascosa County v. Atascosa County Appraisal Dist.,* 990 S.W.2d 255, 258 (Tex. 1999). We must reject any statutory interpretation that defeats the legislative purpose. *Id.*

### Was the Lien Affidavit a Valid Affidavit?

■ In his first and second issues, Page asserts that the trial court's fourth and fifth findings of fact are erroneous because the Lien Affidavit did not contain a jurat and therefore was not a valid lien affidavit. An "affidavit" is "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX.GOV.CODE ANN. § 312.011(1) (Vernon 1998). Wood's Lien Affidavit is a statement in writing of facts, signed by the party making it. The only question is whether the failure to have a jurat at the end of the document makes the affidavit defective, allegedly because it is not "sworn to before an officer authorized to administer oaths and officially certified to by the officer under his seal of office." *See id.*

The top of the Lien Affidavit reads as follows:

> BEFORE ME, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared LARRY MARGREITER, who, being by me here and now duly sworn, upon oath says:

This language, combined with the notary's signature and seal, makes the Lien Affidavit a valid affidavit. *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 645–46 (Tex. 1995); *Griffin v. Baylor College of Medicine*, 945 S.W.2d 158, 159–60 (Tex.App.—Houston [1st Dist.] 1997, no writ). Page cites cases holding that an acknowledgment alone is not sufficient to make a document a valid affidavit. These cases are not on point because the documents in those cases did not contain the above language. Because Page's challenge to the validity of the Lien Affidavit fails, we overrule his first and second issues.[1]

### Was There Evidence That Page Did Not Retain Ten Percent of the Contract Price?

In his third and fourth issues, Page asserts that there was no evidence to support the trial court's findings that Page did not retain ten percent of the contract price as statutory retainage and that Page instead used this money to pay other contractors to complete the work on the Property. We agree that there was no evidence to support these findings.

Chapter 53 of the Texas Property Code provides two methods by which a subcontractor can perfect a lien on private, non-residential property. Subchapter E (TEX. PROP.CODE. ANN. §§ 53.101–53.106) is generally referred to as the "statutory retainage" method. This subchapter provides, in pertinent part, as follows:

§ 53.101. Required Retainage

(a) During the progress of work under an original contract for which a mechanic's lien may be claimed and for 30 days after the work is completed, the owner shall retain:

(1) 10 percent of the contract price of the work to the owner; or

(2) 10 percent of the value of the work, measured by the proportion that the work done bears to the work to be done, using the contract price or, if there is no contract price, using the reasonable value of the completed work.

. . .

§ 53.103. Lien on Retained Funds

A claimant has a lien on the retained funds if the claimant:

(1) sends the notices required by this chapter in the time and manner required; and

(2) files an affidavit claiming a lien not later than the 30th day after the work is completed

. . .

§ 53.105. Owner's Liability for Failure to Retain

(a) If the owner fails or refuses to comply with this subchapter, the claimants complying with this subchapter have a lien, at least to the extent of the amount that should have been retained from the original contract under which they are claiming, against the house, building, structure, fixture, or improve-

---

1. In his seventh and eighth issues, Page asserts that his general denial was sufficient to preserve his attack on the validity of the Lien Affidavit and that the trial court abused its discretion in denying him leave to file a trial amendment expressly asserting this argu-ment. Both of these issues are based on the premise that Page's attack on the validity of the Lien Affidavit has merit. Because it does not, we overrule Page's seventh and eighth issues.

ment and all of its properties and against the lot or lots of land necessarily connected.

(b) The claimants share the lien proportionately in accordance with the preference provided by Section 53.104.

. . .

§ 53.106(e)

In this subchapter [which includes § 53.101], "completion" of an original contract means the *actual completion* of the work, including any extras or change orders reasonably required or contemplated under the original contract, other than warranty or repair work.

TEX.PROP.CODE ANN. §§ 53.101, 53.103, 53.105, and 53.106(e) (Vernon 1995) (emphasis added) (footnotes omitted).

Additionally, under the "fund-trapping" method in Subchapter D of Chapter 53 (TEX PROP.CODE. ANN. §§ 53.081–53.084), a subcontractor can trap, in the owner's hands, funds payable to the general contractor if the owner timely receives notice from the subcontractor that he has not been paid. If the owner pays any money to the general contractor after receiving this notice from the subcontractor, the owner's property will be subject to a lien to the extent of the money paid. This subchapter provides as follows regarding the owner's liability:

§ 53.084. Owner's Liability

(a) Except for the amount required to be retained under Subchapter E, the owner is not liable for any amount paid to the original contractor before the owner is authorized to withhold funds under this subchapter.

(b) If the owner has received the notices required by Subchapter C, if the lien has been secured, and if the claim has been reduced to final judgment, the owner is liable and the owner's property is subject to a claim for any money paid to the original contractor after the owner was authorized to withhold funds under this subchapter. The owner is liable for that amount in addition to any amount for which he is liable under Subchapter E.

TEX.PROP.CODE ANN. § 53.084 (Vernon 1995) (footnotes omitted).[2]

■ There was no evidence at trial that Page failed to retain ten percent of the monies owed to Sepolio. The only evidence on this point was offered by Page's attorney-in-fact who testified that $30,000—10% of $300,000—was held back by Page as statutory retainage. The fact that Page paid other contractors to finish the job does not necessarily mean that he paid these contractors retainage funds. There was no evidence that Page paid these contractors with retainage funds. Therefore, we agree with Page that no evidence supports the challenged findings. The only evidence on the issue proved that Page did retain ten percent of the contract price.

This does not end our inquiry, however, because the next question is whether Page has shown that this error is reversible error. After reviewing the record and Page's arguments, we conclude that there is reversible error as to the lien-foreclosure portion of the trial court's judgment but not as to the money judgment against Page. In this context, the only Lien on the Property that might be foreclosed would be either a retainage lien under § 53.105[3]

---

**2.** Throughout this opinion, we cite to the version of Chapter 53 of the Texas Property Code that was in effect on August 31, 1997.

**3.** Unless otherwise specified, all statutory citations in this opinion are to the version of the Texas Property Code that was in effect on August 31, 1997.

or a fund-trapping lien under § 53.084. However, there was no evidence of a failure to retain, and therefore, Wood was not entitled to a retainage lien against the Property under § 53.105. As to the fund-trapping lien, Page asserts in his brief that Wood was not entitled to a fund-trapping claim against Page. Wood does not assert on appeal that it was entitled to a fund-trapping claim against the Property. There was no evidence that Page made any payments to Sepolio after receiving notice of Wood's lien claim. There was no evidence in the trial court to support a fund-trapping lien in favor of Wood. Therefore, the error alleged in the third and fourth issues is reversible error as to the foreclosure of the Lien against the Property. The only possible basis for this *in rem* relief was a retainage lien that required a failure by Page to retain ten percent of the contract price. Because there was no evidence of this failure, there was no evidence to support a retainage lien against the Property or to support the foreclosure of the Lien. The error alleged in the third and fourth issues does not affect Wood's right to an *in personam* judgment based on its retainage claim under § 53.103, if Wood gave proper notice

of its claim.[4] *MBank El Paso Nat. Ass'n v. Featherlite Corp.*, 792 S.W.2d 472, 477 (Tex.App.—El Paso 1990, writ denied). Therefore, we sustain the third and fourth issues and hold that the trial court erred in awarding foreclosure of the Lien against the Property.[5]

### Did Wood Timely File Its Lien Affidavit and Send A Copy of the Affidavit to Page?

In his ninth issue, Page asserts that the date that the work was "completed" for purposes of §§ 53.101 & 53.103 was the date that Page terminated his contract with Sepolio—April 14, 1998—rather than the date that the work was completed by the substitute contractors—July 21, 1998. Under the version of Chapter 53 of the Texas Property Code that applies to this case,[6] Wood had to file the Lien Affidavit not later than the thirtieth day after the work was completed, and Wood had to send a notice of filed affidavit to Page by the earlier of the tenth day after the Lien Affidavit was filed or the date that the Lien Affidavit was required to be filed. *See* §§ 53.055 & 53.103. If Page's argument were correct and the work was completed on April 14, 1998, then Wood would

---

4. Based on the evidence of Page's attorney-in-fact regarding retention of funds and the other evidence and stipulations in this case, there is sufficient evidence under TEX.R.CIV.P. 299 to supply a finding that Page was liable to Wood under § 53.103. The record showed that on September 17, 1998, Page paid another lien claimant $3,582.74. Because this was the only retainage paid by Page, there was still $26,417.26 of retainage left ($30,000 minus the $3,582.74 paid to the other lien claimant), which is more than enough to cover Wood's claim.

5. Because we have sustained the legal sufficiency arguments in the third and fourth issues, we need not reach the factual sufficiency arguments in the fifth issue. As to his sixth issue, Page has waived any error under this

issue. Under Rule 38.1(h) of the Texas Rules of Appellate Procedure, Page's brief must contain a clear, concise argument in support of its contentions, including appropriate citations to authorities and to the record. TEX. R.APP.P. 38.1(h); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 435 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). By raising his sixth issue and then failing to present any argument or authority in support of that issue, Page has waived review of his sixth issue. *Id.*

6. The parties agree that the version of Chapter 53 of the Texas Property Code in effect on August 31, 1997 governs this case. Because of this agreement and because Page contracted with and Sepolio prior to September 1, 1997, we apply this version of this statute.

have had to file the Lien Affidavit and send out the notice of filing of the Lien Affidavit by May 14, 1998, and Wood's lien claim would be untimely under §§ 53.055 & 53.103. *See id.* On the other hand, if the work was completed when the replacement contractors finished working, as asserted by Wood, then Wood's lien claim was timely under §§ 53.055 & 53.103.[7] *See id.*

In support of his argument that the date of completion is the date that Page terminated Sepolio, Page cites two cases and a treatise. The treatise appears to say that a different retainage fund is calculated for each contract entered into by the owner. This does not speak to the determination of the date of completion in an abandonment context. The first case cited by Page seems to support the opposite conclusion. It states that "completion" is defined under the unambiguous language of § 53.106(e) to mean "the actual completion of the work ... other than repair work or warranty work." *See* § 53.106(e); *TDIndustries, Inc. v. NCNB Texas Nat. Bank,* 837 S.W.2d 270, 272 (Tex.App.—Eastland 1992, no writ). This case further holds that these statutes must be construed liberally to protect lien claimants and that "completion" under Section 53.101 means actual completion of the work required or contemplated by the original contract including any extras or change orders. *Id.* This case did not involve substitute contractors, but it did construe completion to mean absolute, one-hundred-percent completion of all work contemplated under the contract, and neither this case nor the statutory definition[8] specify that the work only be done by the contractor who started it, as opposed to a substitute contractor. In the other case cited by Page, the lien claimant supplied materials to a construction project, and, before the owner retained the building contractor, the owner had hired two other contractors—whose work was completed and paid for before the third contractor was retained. *See McKalip v. Smith Bldg. & Masonry Supply, Inc.,* 599 S.W.2d 884, 885 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). In *McKalip,* the owner entered into three separate contracts with three different contractors, and each contract had a different scope of work and subject matter. *Id.* In our case, the replacement contractors simply finished the same work that was supposed to be done by Sepolio. Therefore, *McKalip* is not on point.

Page asserts that, as to Wood, we should limit the "work" referred to in § 53.101 to the work done by Sepolio. We reject Page's interpretation as contrary to the language of §§ 53.101, 53.103, and 53.106(e). The mechanic's and materialman's lien statutes should be liberally construed for the purpose of protecting lien claimants. *First Nat. Bank in Graham v. Sledge,* 653 S.W.2d 283, 288 (Tex.1983). In this context, we hold that the "actual completion of the work" did not occur until July 21, 1998[9] and that Wood's lien claim

---

7. Page admits that Wood's notice of claim was timely, so that notice is not in issue.

8. § 53.106(e) was repealed in 1999, but still applies to this case.

9. While it may not be hard to find out if the original contractor has duly completed all of the work on a project, it is much harder for a subcontractor or material supplier to find out that the general contractor has been terminated in order to perfect its lien and retainage rights within 30 days of the termination date. Since the substitute contractors finished the same work that Sepolio would have done if he had stayed on the job, it seems appropriate, under §§ 53.101, 53.103, 53.106(e), to find that the completion of work occurred on July 21, 1998.

was timely under §§ 53.055 & 53.103. We overrule Page's ninth issue.[10]

## Conclusion

We overrule the first, second, seventh, and eighth issues because the Lien Affidavit was a valid affidavit. We need not reach the fifth issue. The sixth issue presents nothing for review. We overrule the ninth issue because we hold that the work was competed on July 21, 1998. We overrule the tenth issue because it does not assert reversible error. As to the third and fourth issues, we agree that there was no evidence that Page failed to retain ten percent of the contract price, and so we sustain these issues. However, the third and fourth issues present reversible error only as to the judgment foreclosing the Lien in the Property; therefore we modify the trial court's judgment to delete the finding of a valid lien on the Property and to delete the award of foreclosure of the Lien on the Property. As so modified, we affirm the trial court's judgment.

10. In his tenth issue, Page asserts that Wood could not have trapped any funds under the statutory fund-trapping provisions because Page paid no money to Sepolio after May 15, 1998 and because, as of May 15, 1998, Sepolio had no right to payment from Page. Even presuming that this argument is correct, the tenth issue asserts no reversible error as to Page's personal liability. We have not sustained any issues that assign error as to Page's personal liability. Therefore, Page has asserted no reversible error under his tenth issue because the trial court could properly have held Page liable under § 53.103. *MBank El Paso Nat. Ass'n,* 792 S.W.2d at 477. We overrule Page's tenth issue.