Herman PAGE, Appellant,

v.

MARTON ROOFING, INC., Appellee.

No. 01–01–00737–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 1, 2002.

John M. Young, Houston, for appellant.

Nancy J. Hesse–Hamren, Coats, Rose, Yale, Ryman & Lee, P.C., Houston, for appellee.

Panel consists of Justices MIRABAL, TAFT, and PRICE.*

**OPINION**

TIM TAFT, Justice.

Appellant, Herman Page, challenges a summary judgment rendered against him and in favor of appellee, Marton Roofing, Inc. (MRI), in a lien-enforcement action. Page raises three issues on appeal: (1) the trial court erred as a matter of law in ruling that MRI timely filed a perfected lien; (2) the trial court erred as a matter of law in ruling that MRI complied with the fund-trapping provisions of the Texas Property Code; and (3) the trial court

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

erred in awarding MRI costs and attorney's fees. We affirm.

**Facts**

The material facts in this case are undisputed. In August 1997, Page entered into an oral contract (Original Contract) with Mark Sepolio, Sr., who was doing business as Custom Concrete & Construction (Sepolio). The Original Contract called for remodeling and expanding a building located at 3502 Dover, Houston, Texas, at the price of $300,000.00. Page made periodic payments totaling $270,000.00. MRI was a subcontractor of Sepolio under the Original Contract. MRI completed its portion of the Original Contract in March 1998. In April 1998, Sepolio demanded that Page advance additional funds to complete the work, and Page refused. Page terminated the Original Contract on April 14, 1998.

Page immediately found several other contractors to finish the project and paid them a total of $30,657.17, with the last payment made on July 21, 1998, when the project was completed. When Sepolio failed to pay MRI under the Original Contract, MRI sent notices of claims totaling $26,892.75 to both Sepolio and Page. MRI filed a mechanic's and materialman's lien affidavit on June 15, 1998 and sent a copy to Page. Both parties moved for summary judgment, and the trial court granted summary judgment in favor of MRI and awarded costs and attorney's fees to MRI.

**Standard of Review**

We follow the usual standards for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c). The movant must show that (1) there is no genuine issue of material fact and (2) it is entitled to judgment as a matter of law. *Nixon v.*

*Mr. Prop. Mgmt. Co. Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). Proof that there are no disputed facts does not automatically entitle the movant to summary judgment; it must still show that, under those undisputed facts, Texas law directs judgment in its favor. *St. Paul Ins. Co. v. Mefford*, 994 S.W.2d 715, 718 (Tex.App.-Dallas 1999, pet. denied).

**Lien Perfection**

In his first issue, Page contends that MRI failed to file a timely lien affidavit. In his second issue, Page contends that MRI did not have a lawful fund-trapping claim because MRI's right to the trapped funds is derivative of the original contractor; therefore, if the original contractor does not have a legal claim, neither does MRI.

**A. Filing of Lien Affidavit**

■ Because the Original Contract was entered into in August 1997, we apply the Property Code effective at that time.[1] Chapter 53 of the Texas Property Code provides the requirements for "retainage" and the means by which to secure a lien against such retained funds:

Section 53.101. Required Retainage

(a) During the progress of work under an original contract for which a mechanic's lien may be claimed and for 30 days after the work is completed, the owner shall retain:

(1) 10 percent of the contract price of the work to the owner; or

(2) 10 percent of the value of the work, measured by the proportion that the work done bears to the work to be done, using the contract

1. Several sections of Chapter 53 were amended in 1997, effective September 1, 1997, after the Original Contract was entered into. *See*

Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 2, 1997 Tex. Gen. Laws 1880, 1881.

price or, if there is no contract price, using the reasonable value of the completed work.

Section 53.103. Lien on Retained Funds

A claimant has a lien on the retained funds if the claimant:

(1) sends the notices required by this chapter in the time and manner required; and

(2) files an affidavit claiming a lien not later than the 30th day after *the work is completed.*

TEX. PROP.CODE ANN. §§ 53.101, 53.103 (Vernon 1995) (emphasis added).

The parties agree that Page maintained the proper retainage under section 53.101 and that MRI provided proper *notice of claim* on May 21, 1998. *See* TEX. PROP. CODE ANN. §§ 53.101, 53.103(1) (Vernon 1995). Page, however, contends that MRI did not timely file the lien affidavit as required under section 53.103(2). *See* TEX. PROP.CODE ANN. § 53.103(2) (Vernon 1995). In order to determine if the lien affidavit was timely filed, we must decide as a matter of law the meaning of "completion of work." *See id.*

We look to the statute to define "completion of work." Statutory language should be construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). We should also consider that the purpose of the statute is to protect laborers and materialmen, and, consequently the statute should be interpreted liberally

in their favor. *TDIndus., Inc. v. NCNB Texas Nat'l Bank,* 837 S.W.2d 270, 272 (Tex.App.-Eastland 1992, no writ).

The terms "completion" and "work" are defined in the statute. "Work" means "any part of construction or repair performed under an original contract." TEX. PROP.CODE ANN. § 53.001(14) (Vernon 1995).[2] At the time of the Original Contract's signing, "completion" meant "the actual completion of the work, including any extras or change orders reasonably required or contemplated under the original contract, other than warranty or repair work." TEX. PROP.CODE ANN. § 53.106(e) (Vernon 1995).[3]

Page contends that the work was completed when Sepolio demanded additional funds and Page refused by terminating the contract on April 14, 1998. MRI contends the work was completed on July 21, 1998, when the other subcontractors finished the work outlined under the Original Contract. MRI filed its lien affidavit on June 15, 1998. If the work was completed on April 14, 1998, then MRI did not timely file its lien affidavit. On the other hand, if the work was not completed until July 21, 1998, then MRI did timely file its lien affidavit.

In *TDIndustries,* the Eastland court of appeals found that section 53.106(e) expressly defines "completion" as when all of the work is to be completed under the original contract. *TDIndus., Inc.,* 837 S.W.2d at 272. In a case similar to this

2. Amended by Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 2, 1997 Tex. Gen. Laws 1880, 1881 (inserting subsecs. (8), (9), and (10) and redesignating former subsecs. (8), (9), (10), and (11) as subsecs. (11), (12), (13), and (14), respectively).

3. This section was repealed effective September 1, 1999, but was effective at the time of the Original Contract. *See* Act of May 21, 1999, 76th Leg., R.S., Ch. 889, § 12, 1999

Tex. Gen. Laws 3591, 3591. "Completion" of an original contract is now defined as "the actual completion of the work, including any extras or change orders reasonably required or contemplated work under the original contract, other than warranty work or replacement or repair of the work performed under the contract." TEX. PROP.CODE ANN. § 53.001(15) (Vernon Supp.2002).

case, our sister court addressed this same issue involving the same Original Contract and the same appellant, but a different contractor. *See Page v. Structural Wood Components, Inc.,* 57 S.W.3d 524 (Tex. App.-Houston [14th Dist.] 2001, pet. granted June 20, 2002). The *Structural Wood* court held that the date the work was completed was July 21, 1998, when all of the work under the Original Contract was completed. *Id.* at 531–32. In reaching its conclusion, the court cited *TDIndustries* and section 53.106(e) of the Property Code. *Structural Wood,* 57 S.W.3d at 531.

Page cites two cases and a treatise, contending that each individual contract controls its own statutory 10% retainage. *See Hayek v. W. Steel Co.,* 478 S.W.2d 786, 792–94 (Tex.1972); *McKalip v. Smith Bldg. & Masonry Supply, Inc.,* 599 S.W.2d 884, 889 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.); YOUNGBLOOD ON TEXAS MECHANICS' LIENS § 803.1[a] (Kirk 1996). These authorities are distinguishable.

First, requiring individual statutory retainage does not define "completion of work" as completion of each individual project because the total value of the project is more important than the timing of the project's completion. *Structural Wood,* 57 S.W.3d at 531. Moreover, the authorities Page cites do not discuss section 53.106(e) of the Property Code. *Hayek* involved the application of the statutory 10% retainage to a project. *Hayek,* 478 S.W.2d at 792–94. The treatise that Page cites is not applicable because it does not address the definition of "completion of work" under the Property Code. *McKalip* involved a case with three separate contracts, contractors, and projects. *McKalip,* 599

S.W.2d at 885. We agree with the *Structural Wood* court in deciding that these authorities are not applicable to this situation and thus that the date the work was completed under the Original Contract is July 21, 1998. *See Structural Wood,* 57 S.W.3d at 531 (holding that cases and treatise cited by Page were not applicable). We hold that "work is completed" under an original contract when there is actual completion of all of the work under the original contract, including a situation when the original contract is terminated.

The Original Contract was completed on July 21, 1998, and the lien affidavit thus had to have been filed by August 21, 1998. MRI filed its lien affidavit on June 15, 1998; therefore, the filing of the lien affidavit was timely. We overrule Page's first issue.

## B. Claim to Trapped Funds

■ In his second issue, Page contends that MRI did not have a legal claim to the trapped funds because the right to trapped funds is derivative of the original contractor's right. Trapped funds are those funds held by an owner until the work is completed. *See* TEX. PROP.CODE ANN. § 53.084 (Vernon 1995). The parties agree that all of the filing requirements were met for a derivative claim under sections 53.052 and 53.056.[4] Page contends only that MRI's liens are invalid because the original contractor did not have a claim.

Page cites cases predating the current sections of the Property Code related to mechanic's and materialman's liens. Those cases stand for the proposition that a subcontractor's claim for trapped funds must be derivative of the original contrac-

---

**4.** Lien affidavits for all non-residential claims must be filed by the 15th day of the fourth month after the work is completed. TEX. PROP. CODE ANN. § 53.052(a) (Vernon Supp.2002). This requirement is different from that in

section 53.103. As discussed in the first issue, section 53.103 requires a lien affidavit on retainage to be filed within 30 days after the work is completed.

**754**

tor's claim. *See Dudley v. Jones,* 77 Tex. 69, 14 S.W. 335, 336 (1890); *Lecountour Bros. Stair Mfg. Co. v. Lyon–Gray Lumber Co.,* 110 Tex. 177, 217 S.W. 136, 137 (1919); *Fox v. Christopher & Simpson Iron Works Co.,* 199 S.W. 833, 835 (Tex. Civ.App.-Galveston 1917, writ ref'd). Page, however, does not point to any statutory authority that requires a subcontractor's claim to be derivative of the original contractor's.

The Property Code contemplates a 10% retainage fund that owners are required to maintain to protect contractors. *See* Tex. Prop.Code Ann. § 53.101 (Vernon 1995). Moreover, a subcontractor can trap funds in the owner's hands if he has not been paid by the original contractor. *Structural Wood,* 57 S.W.3d at 529; *see* Tex. Prop. Code Ann. § 53.084 (Vernon 1995). There is nothing in the statute that prevents a subcontractor from perfecting a lien separate from the original contractor's. Because the fund-trapping provisions have been interpreted to benefit the subcontractors independently of the contract, we hold the liens are valid.

We overrule Page's second issue.

### Costs and Attorney's Fees

■ In his third issue, Page contends that the trial court abused its discretion in awarding MRI costs and attorney's fees. Page contends only that, because the trial court erred in granting summary judgment, an award of costs and attorney's fees was improper. Section 53.156 authorizes the award of costs and attorney's fees "[i]n any proceeding to foreclose a lien [or] ... in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court may award costs and reasonable attorney's fees as are equitable and just." Tex. Prop.Code Ann. § 53.156 (Vernon 1995).

Page does not contend that the trial court was inequitable or unjust in its award of costs and attorney's fees. Having held that the trial court did not commit error by granting summary judgment, we hold that the award of costs and attorney's fees was appropriate.

We overrule Page's third issue.

### Conclusion

We affirm the judgment of the trial court.

Justice MIRABAL, concurring in the judgment only.