Opinion issued December 20, 2007












In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00746-CV






GUSTAVO ARIAS D/B/A GUS TRUCKING SERVICE, Appellant


V.


BROOKSTONE, L.P. AND LIBERTY MUTUAL INSURANCE COMPANY,
Appellees


and


SITE WORK GROUP, INC., Appellant


V.


GUSTAVO ARIAS D/B/A GUS TRUCKING SERVICE, Appellee


and



BROOKSTONE, L.P., Appellant


V.


SITE WORK GROUP, INC., Appellee






On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 2003-54015






O P I N I O N

 This appeal arises out of disputes over the construction of a new building for
the Unity Church of Christianity. Among other things, we must decide whether
Property Code section 53.055 requires that a mechanic's, contractor's, and
materialman's lien affidavit be filed with the county clerk before the required notice
is given. Tex. Prop. Code Ann. § 53.055 (Vernon Supp. 2007). We hold that it does
not.

Background


 Brookstone, L.P. ("Brookstone") was the general contractor on the construction
project. Brookstone posted a payment bond in favor of Unity, which was issued by
Liberty Mutual Insurance Company ("Liberty Mutual"). Brookstone subcontracted
the site preparation to Site Work Group, Inc. ("SWG"). SWG, in turn, subcontracted
with Gustavo Arias d/b/a Gus Trucking Service ("Arias") to haul off the excavated
material and to supply new fill for the foundation. Problems arose between these
parties and also with others who are not involved in this appeal. Primarily,
Brookstone was dissatisfied with SWG's work, and SWG was dissatisfied with
Arias's work. When Arias was not paid by SWG, he filed lien affidavits against the
property, which affected Brookstone and its payment bond issued by Liberty Mutual. 
Brookstone filed suit seeking a declaratory judgment that Arias had no right to assert
liens against the property. Brookstone later added SWG as a defendant, suing for
breach of contract. Arias counterclaimed against Brookstone and Liberty Mutual as
third-party defendants and cross-claimed against SWG. SWG counterclaimed against
both Brookstone and Arias.

 After the trial court rendered partial summary judgment on some of the issues
in dispute and others were nonsuited, the case was tried to a jury. The trial court
rendered judgment on the verdict as follows: (1) Brookstone take nothing from SWG;
(2) SWG recover $15,000 from Brookstone along with attorney's fees for its quantum
meruit claims; (3) SWG take nothing from Brookstone on its breach-of-contract and
other claims; (4) Arias recover $42,000 from SWG along with attorney's fees for his
breach-of-contract claim; (5) Arias take nothing from SWG on his fraud claims; and
(6) SWG take nothing from Arias on its breach-of-contract claim. The trial court also
rendered judgment based on its February 14, 2005 summary-judgment order as
follows: (1) Arias take nothing from Liberty Mutual on his claim on a payment bond;
(2) the lien affidavits filed by Arias against Unity were invalid; and (3) Arias pay
Brookstone and Liberty Mutual $15,000 in attorney's fees.

Arias's Appeal Against Brookstone and Liberty Mutual

 In his first issue, Arias contends the trial court erred in its February 14, 2005
summary-judgment order by dismissing Arias's claim for payment on the payment
bond and invalidating his filed lien affidavits. On March 14, 2003, Arias executed
lien affidavits and mailed copies to Unity, the property owner, and contractors
Brookstone and SWG. On April 4, 2003, Arias filed the affidavits with the county
clerk. Brookstone's and Liberty Mutual's motion for summary judgment against
Arias raised two grounds: (1) Arias failed to comply with the notice provisions of
Property Code section 53.055(a) because he sent copies of the affidavits before he
filed them with the county clerk and (2) Arias's May 29, 2003 lien affidavits, filed
with the county clerk on May 30, 2003, were not supported by any valid debt. Tex.
Prop. Code Ann. § 53.055 (Vernon Supp. 2007). Because the trial court granted the
motion without specifying a particular ground, we review both grounds. Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996).

 Property Code section 53.055(a) states:

 A person who files an affidavit must send a copy of the affidavit by
registered or certified mail to the owner or reputed owner at the owner's
last known business or residence address not later than the fifth day after
the date the affidavit is filed with the county clerk.

In a split decision, the Corpus Christi Court of Appeals has held that section 53.055
does not require that a mechanic's, contractor's, and materialman's lien affidavit be
filed with the county clerk before the required notice is given. New AAA Apartment
Plumbers, Inc. v. DPMC-Briarcliff, L.P., 145 S.W.3d 728, 730 (Tex. App.--Corpus
Christi 2004, no pet.). We agree with this holding.

 Unless a statute is ambiguous, we construe a statute as written, using the literal
text. Alex Sheshunoff Mgmt. Servs., L.P. v. Kenneth Johnson & Strunk Assocs., L.P.,
209 S.W.3d 644, 651-52 (Tex. 2006). We resort to external sources like those listed
in the Code Construction Act only when the statute is ambiguous. Id. at n.4; Code
Construction Act, Tex. Gov't Code Ann. § 311.023 (Vernon 2005). As written, the
statute only provides the deadline for giving notice that a lien affidavit has been
executed, not a period during which notice may be given.

 When a statute is intended to establish a period in which an action must be
taken, the legislature's own drafting standard is to set forth clearly the first and last
days of the period. Texas Legislative Council Drafting Manual § 7.28, at 99
(Charlotte Norris ed. 2006) (giving drafting example of "after March 31 and before
June 1" as clear means of describing period). Nothing in the statute clearly states that
notice must be given during a period that begins on the day after the lien affidavit is
filed and ends on the fifth day after the date the affidavit is filed. See Code
Construction Act, Tex. Gov't Code Ann. § 311.014 (Vernon 2005) (setting forth
means of computing period of time).

 The heading for section 53.055, "NOTICE OF FILED AFFIDAVIT," does
suggest that notice is to be given after filing the affidavit. A statute's heading,
however, should not be used to limit or expand the meaning of the statute. Code
Construction Act, Tex. Gov't Code Ann. § 311.024 (Vernon 2005); see Brooks v.
State, 682 S.W.2d 437, 438 (Tex. App.--Houston [1st Dist.] 1984, pet. ref'd).

 Interpreting a former version of section 53.055, we held that in the absence of
a specific deadline to give notice of the lien affidavit to the property owner, notice
must be given no later than the deadline to file the affidavit. (1) Cabintree, Inc. v.
Schneider, 728 S.W.2d 395, 397 (Tex. App.--Houston [1st Dist] 1986, writ ref'd). 
We further stated that the purpose of section 53.055 "is to ensure that the owner
receives actual notice that an affidavit has been filed against his property so that he
will be able to take steps to protect himself." Id. at 396-97 (emphasis original). 
While the question of whether notice of the lien affidavit could predate the filing of
the affidavit was not at issue in Cabintree, the language quoted above certainly
indicates in dicta that the affidavit should be filed before notice is given. Id. We
based this dicta not on the then-current text of section 53.055, but instead on an
analysis of the text of former Revised Statutes article 5453(1). Id.; Act of May 24,
1961, 57th Leg., R.S., ch. 382, § 2, art. 5453(1), 1961 Tex. Gen. Laws 863, 864,
repealed by Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws
3475, 3730. We looked back to the previous statute, article 5453(1), using the
rationale that the 1983 enactment of the Property Code was nonsubstantive. See Tex.
Prop. Code Ann. § 1.001 (Vernon 2004) (stating Property Code is part of continuing
statutory revision program that revises existing law without substantive change); see
also Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 7, 1983 Tex. Gen. Laws 3475,
3730 ("This Act is intended as a recodification only, and no substantive change in the
law is intended by this Act."). The statutory analysis of former article 5453(1) in
Cabintree turned on the fact that "the requirements of filing the affidavit, and sending
copies of the affidavit, are contained in the same sentence." Cabintree, 728 S.W.2d
at 397.

 Since we issued Cabintree, the supreme court has held that courts may not look
back to the former text of a statute which has been "nonsubstantively" codified if the
current text is direct and unambiguous. Fleming Foods, Inc., v. Rylander, 6 S.W.3d
278, 286 (Tex. 1999). (2) Our prior analysis in Cabintree, based on the text of former
article 5453(1), is no longer a permissible means of statutory construction, and we
decline to follow the dicta from Cabintree that notice must be given after the lien
affidavit has been filed.

 Reading section 53.055 and applying the rules of statutory interpretation cited
above, we conclude that the purpose of the statute is to ensure that the owner receives
actual notice that a lien affidavit has been executed with the intent to file the affidavit
and create a lien against the owner's property, thus allowing the owner or original
contractor to take appropriate action. Nothing in the statute requires that the property
owner or original contractor be notified that the affidavit was actually filed. Because
the person executing the lien affidavit must file the affidavit by the relatively short
deadlines stated in Property Code sections 53.052 and 53.056 (generally within two
to four months from the date the indebtedness accrues), the owner and original
contractor can hardly claim to be hurt when they are notified in advance of the actual
filing of the lien affidavit. Tex. Prop. Code Ann. §§ 53.052, .056 (Vernon Supp.
2007); see New AAA Apartment Plumbers, 145 S.W.3d at 730 (purpose of section
53.055 notice is, in part, to prevent property owner from being ambushed by recorded
lien). In fact, the property owner or original contractor may be able to resolve the
dispute before the lien affidavit is filed, preventing a cloud on title to the property. 
It is in no way absurd for the legislature to allow a property owner or original
contractor to receive notice before an affidavit is actually filed, as opposed to five
days after the filing occurs, and we decline to rewrite section 53.055 to require that
notice can be given only after the lien affidavit is filed.

 In their second ground for summary judgment, Brookstone and Liberty Mutual
claim that Arias's May 29, 2003 lien affidavits, filed on May 30, 2003, are nullities
because they do not refer to a new debt separate from the March 14, 2003 lien
affidavits. See Tex. Prop. Code Ann. § 53.024 (Vernon 1995) (limiting amount a
subcontractor may claim). In essence, Brookstone and Liberty Mutual are claiming
that the May affidavits cannot cure the alleged deficiency in notice associated with
the original affidavits. Brookstone and Liberty Mutual admit in their motion for
summary judgment that the two sets of affidavits are for the same underlying debt. 
Because we have held that the March 14, 2003 affidavits are not invalid due to lack
of notice, we need not reach Brookstone's and Liberty Mutual's second ground for
summary judgment.

 We sustain issue one.

 In issue two, Arias challenges the trial court's award of attorney's fees under
Property Code section 53.156. Tex. Prop. Code Ann. § 53.156 (Vernon 1995)
(allowing attorney's fees "as are equitable and just"). Because we have concluded
that the trial court erred in granting Brookstone's and Liberty Mutual's motion for
summary judgment, we agree that the trial court's award of attorney's fees was error. 
See Page v. Marton Roofing, Inc., 102 S.W.3d 750, 754 (Tex. App.--Houston [1st
Dist] 2002), rev'd on other grounds, 102 S.W.3d 733 (Tex. 2003).

 We sustain issue two.

 In issue three, Arias contends the trial court erred in denying his January 13,
2005 third motion for summary judgment against Liberty Mutual. We overrule this
issue because there was a jury trial as to all issues not resolved by summary judgment. 
Arias, therefore, is not entitled to appeal the denial of his motion for summary
judgment. Cincinnati Life, 927 S.W.2d at 625.

 In issue four, Arias claims the trial court erred in rendering summary judgment
for Brookstone on its affirmative defense to Arias's claim that Brookstone misapplied
constructive trust funds in violation of Property Code section 162.031. Tex. Prop.
Code Ann. § 162.031 (Vernon 1995). Nowhere in Arias's appellate brief is there an
indication that his request for the remedy of a constructive trust is for a claim that is
different from the claim that underlies the lien affidavits we have previously
discussed in issue one. Because we sustained issue one, it is unnecessary for us to
reach issue four.

 In Arias's issue five, he asks this Court to award him appellate attorney's fees
against SWG according to a Rule 11 agreement in the trial court. See Tex. R. Civ.
P. 11. We take no action on this issue because Arias is not claiming any error on the
part of the trial court.

Site Work Group's Appeal Against Arias


 In two issues, SWG challenges the portion of the final judgment which
awarded $42,000 to Arias. SWG first argues that Arias's lawyer committed incurable
jury argument by "going outside the record to allege criminal conduct, fraud, and a
conspiracy between SWG and Brookstone." SWG specifically mentions five
examples of alleged improper argument: (1) in the first example, SWG did not object;
(2) in the second example the trial court sustained SWG's objection; and (3) in the
other three examples the trial court did not rule on the objections. The trial court
instructed the jury to base the verdict on the evidence and to not let bias, prejudice,
or sympathy affect its deliberations. SWG failed to obtain a contemporaneous
adverse ruling on its objections, as is normally required to preserve an error for
appeal. See Tex. R. App. P. 33.1(a).

 SWG tacitly acknowledges its lack of preservation at closing argument, as it
relies on case law that relieves a party from contemporaneously preserving error
concerning an improper jury argument if the argument is incurable. See, e.g., Otis
Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968). The rationale for not
requiring a contemporaneous preservation of error is that the lawyer making the
incurable argument is the offender, so the law does not require the opposing lawyer
to potentially further prejudice the client's case before the jury by objecting. Id. 
Incurable jury argument, however, must be raised in a motion for new trial, which
SWG did. See Tex. R. Civ. P. 324 (incurable jury argument must be raised in motion
for new trial if not otherwise ruled on by the trial judge); see, e.g., Turner v. Turner,
385 S.W.2d 230, 237 (Tex. 1964) (complaint of incurable jury argument may be made
for first time in motion for new trial).

 Characterizing a jury argument as incurable, as opposed to merely improper,
is a serious matter. The supreme court has described this distinction as follows:
"Argument which could be properly cured by objection by opposing counsel and
instruction by the trial judge is not reversible error in the absence of such objection. 
Unless the argument is incurable, a litigant will not be permitted to lie in wait, taking
a chance on a favorable verdict, and, being disappointed, complain for the first time
of improper argument in a motion for new trial." Turner, 385 S.W.2d at 237.
Accordingly, a party alleging incurable jury argument must explain on appeal why
counsel's argument was incurable based on an evaluation of the whole case. See Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (requiring party on appeal to
explain why comments were incurable); Luna v. N. Star Dodge Sales, Inc., 667
S.W.2d 115, 120 (Tex. 1984) (trial court's decision not to grant mistrial based on
incurable argument or questioning may be reversed only after evaluating case from
voir dire to closing argument).

 This was a week-long jury trial involving multiple parties and witnesses. The
appellate record consists of a 15-volume clerk's record and 19-volume reporter's
record. In its brief, SWG does not place the alleged improper comments in the
context of the entire case, even though it acknowledges there were claims of
conspiracy and constructive trust violations that were nonsuited before all sides rested
and final argument began. It is an appellant's burden to demonstrate reversible error,
and we hold that SWG has not argued the alleged incurable jury argument in light of
the entire case. Accordingly, we overrule issue one.

 In issue two, SWG argues there is legally and factually insufficient evidence
to support the jury's answer to question 24:

 What sum of money, if paid now in cash, would fairly and reasonably
compensate [Arias] for its damages, if any, that resulted from [SWG's]
failure to comply?


 Consider the following elements of damages, if any, and none other:


 a. The amount [SWG] agreed to pay [Arias] pursuant to their
agreement.

 b. Lost profits that, as a natural, probable, and foreseeable
consequence of [SWG's] breach of contract, [Arias]
suffered in the past;

 c. Returned check charges that, as a natural, probable, and
foreseeable consequence of [SWG's] breach of contract,
[Arias] sustained in the past.


 Do not add any amount for interest on damages, if any.


 Answer in dollars and cents, if any.


 ANSWER: $42,000.[00] 

SWG preserved its legal-sufficiency complaint in a motion to disregard jury findings
and its factual-sufficiency complaint in a motion for new trial.

 When SWG attacks the legal sufficiency of an adverse finding on an issue for
which it did not have the burden of proof, SWG must demonstrate that there is no
evidence to support the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55,
58 (Tex. 1983). Such a no-evidence challenge will be sustained when "'(a) there is
a complete absence of evidence of a vital fact, (b) the court is barred by rules of law
or of evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d)
the evidence conclusively establishes the opposite of the vital fact.'" King Ranch,
Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Merrell Dow Pharms.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). When SWG challenges the legal
sufficiency of the evidence that Arias offered to prove a vital fact, "we must view the
evidence in a light that tends to support the finding of disputed fact and disregard all
evidence and inferences to the contrary." Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d
706, 709 (Tex. 2003). However, "[t]he final test for legal sufficiency must always be
whether the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review. . . . [L]egal-sufficiency review in the proper light must
credit favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not." City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). The jury is the sole judge of witnesses' credibility; it may choose to
believe one witness over another, and a reviewing court cannot impose its own
opinion to the contrary. Id. at 819. Because it is the jury's province to resolve
conflicting evidence, we must assume that jurors resolved all conflicts in accordance
with their verdict if reasonable human beings could do so. Id.

 When SWG challenges the factual sufficiency of the evidence, this Court must
consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); see also Pool v. Ford Motor
Co., 715 S.W.2d 629, 635 (Tex. 1986), overruled on other grounds by Crown Life
Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000); In re King's Estate, 244 S.W.2d
660, 661 (Tex. 1951).

 At trial and on appeal, SWG does not challenge the sufficiency of the evidence
based on all three elements that were submitted to the jury in question 24. SWG does
not argue on appeal that the trial court submitted an erroneous charge. We therefore
review the sufficiency of the evidence based on the court's charge, not against the
question and any instruction that should have been submitted. See Osterberg v. Peca,
12 S.W.3d 31, 55 (Tex. 2000). Because SWG does not address each of the three
damage elements that was submitted to the jury, we hold that SWG has waived its
sufficiency challenge to question 24.

 Brookstone's Appeal Against Site Work Group


 In a single issue, Brookstone appeals the portion of the final judgment which
awarded $15,000 to SWG from Brookstone for the "amount of compensable work
rendered by SWG for which it was not paid," because the judgment also stated that
"SWG take nothing by its claim for breach of contract against Brookstone." This
portion of the judgment was based on the answers to questions 5, 6, 7, 9, and 10 in
the jury's verdict, which found that Brookstone failed to comply with its agreement
with SWG (question 5), that Brookstone's failure to comply was excused (questions
6 and 7), that SWG performed compensable work for Brookstone for which it was not
paid (question 9), and that $15,000.00 was the reasonable value of the compensable
work (question 10). The jury also found that SWG failed to comply with its
agreement with Brookstone (question 1), that SWG's failure was excused (question
2), and that SWG substantially complied (question 3). Because the jury found that
Brookstone's breach of contract was excused, the trial instead awarded SWG $15,000
on the quantum meruit claim.

 Brookstone claims the trial court erred in allowing SWG to recover in quantum
meruit when the work was performed pursuant to a contract for which Brookstone's
breach was excused. Quantum meruit is an equitable remedy which does not arise out
of a contract, but is independent of it. (3) Vortt Exploration Co. v. Chevron U.S.A., Inc.,
787 S.W.2d 942, 944 (Tex. 1990). Generally, a party may recover under quantum
meruit only when there is no express contract covering the services or materials
furnished. Id. A party to a contract may, however, seek alternative relief under both
contract and quantum meruit theories. In re Kellogg Brown & Root, Inc., 166 S.W.3d
732, 740 (Tex. 2004). The problem is not that the trial court submitted alternative
theories of recovery to the jury. Instead, the issue is whether SWG can recover based
on quantum meruit once the jury found that Brookstone breached its contract with
SWG.

 There is no dispute that a written contract exists which covers the services and
materials in question. SWG, therefore, cannot recover in quantum meruit unless an
applicable exception to the general rule exists. See DiMiceli v. Affordable Pool
Maint., Inc., 110 S.W.3d 164, 169 (Tex. App.--San Antonio 2003, no pet.). SWG,
however, does not argue that an exception applies here. Instead, it appears to make
two arguments. First, SWG claims that case law stating a party can submit alternative
theories of recovery to the jury also authorizes a party to recover both on the contract
and in quantum meruit. Second, SWG argues that because Brookstone's breach of
contract was excused, there was no "recovery." SWG cites no authority expressly
addressing either of these arguments, and we know of none.

 Brookstone further challenges the portion of the final judgment which awarded
(1) $70,000 to SWG from Brookstone for attorney's fees, plus additional attorney's
fees on appeal, and (2) court costs. Brookstone asks this Court to reverse those
awards because SWG did not prevail on its quantum meruit claim and was not a
successful party to the suit. See Tex. R. Civ. P. 131. We agree.

 We sustain Brookstone's single issue.

 In its September 15, 2006 appellee's brief, SWG also brings what it calls a
"cross-point," claiming the trial court erred in failing to render judgment on the jury's
verdict that Brookstone breached the contract (question 5) and damages for that
breach were $31,919 (question 8). SWG asks this Court to hold that the two finding
that Brookstone's breach was excused (questions 6 and 7) are immaterial. SWG has
wholly failed to brief this "cross-point" on either the law or the law's relation to the
facts of this case. See Tex. R. App. P. 38.1(h) ("The brief must contain a clear and
concise argument for the contentions made, with appropriate citations to authorities
and to the record."). Although appellate courts generally construe the briefing rules
liberally, points of error or issues unsupported by the citation of authority present
nothing for the court to review. Harris County Mun. Util. Dist. No. 48 v. Mitchell,
915 S.W.2d 859, 866 (Tex. App.--Houston [1st Dist.] 1995, no writ). Accordingly,
we hold that SWG waived its "cross-point" concerning recovery of $31,919 on its
breach-of-contract claim.

Conclusion We reverse the portions of the judgment that (1) dismissed Arias's claim for
payment on the payment bond and invalidated his filed lien affidavits, (2) awarded
attorney's fees from Arias to Brookstone and Liberty Mutual, and (3) awarded
$15,000 from Brookstone to SWG, as well as attorney's fees and court costs. We
affirm the remainder of the judgment and remand the case to the trial court for the
limited purposes of considering (1) Arias's claim on the payment bond and (2) and
any motion to sever.

 


 Sam Nuchia

 Justice


 Panel consists of Justices Nuchia, Keyes, and Higley.
1. "A person who files an affidavit must send two copies of the affidavit by
registered or certified mail to the owner at the owner's last known business or
residence address." Act of May 26, 1983, 68th Leg., R.S., ch. 576, sec. 1,
§ 55.055, 1983 Tex. Gen. Laws 3475, 3540, amended by Act of May 28, 1989,
71st Leg., R.S., ch. 1138, § 7, 1989 Tex. Gen. Laws 4693, 4695, amended by
Act of Apr. 15, 1993, 73d Leg., R.S., ch. 48, § 7, 1993 Tex. Gen. Laws 97, 99,
amended by Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 7, 1997 Tex. Gen.
Laws 1880, 1882, amended by Act of May 21, 1999, 76th Leg., R.S., ch. 889,
§ 2, 1999 Tex. Gen. Laws 3586, 3587.
2. As a separate section of a 2001 enrolled bill that sought to add two new
sections to the Code Construction Act, Government Code chapter 311, the
legislature voiced its disapproval of Fleming:


 The legislature finds the decision of the Texas Supreme
Court in Fleming Foods of Texas, Inc., v. Rylander, 6
S.W.3d 278 (Tex. 1999), to be inconsistent with the clear
and repeatedly expressed intent of the legislature in the
enactment of the Tax Code and other nonsubstantive codes
enacted under the state's continuing statutory revision
program under Section 323.007, Government Code. The
absence of any legislative action subsequent to the holding
in Fleming Foods of Texas, Inc., v. Rylander shall not be
construed as legislative acceptance of the holding in that
case.


 Tex. H.B. 2809, § 3, 77th Leg., R.S. (2001). The governor disagreed with the
amendments to the Code Construction Act and vetoed the bill. Veto Message
of Gov. Perry, Tex. H.B. 2809, 77th Leg., R.S. (2001) ("House Bill No. 2809
would fundamentally alter the manner in which Texas courts interpret the
written laws of Texas. Besides implicating separation of powers concerns, this
bill would tend to make it more difficult for ordinary Texans to ascertain the
laws they are bound to obey."). The governor did not comment on the
legislative disapproval of Fleming.
3. A party who has breached the contract cannot normally sue another party to the
contract for breach, but there is an exception in construction contracts when the
breaching plaintiff has substantially complied with the contract. Dobbins v.
Redden, 785 S.W.2d 377, 378 (Tex. 1990). Due to this exception, SWG was
able to successfully sue Brookstone for breach of contract, but the jury found
that Brookstone's breach was excused.